SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:24-cr-00051-AB** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **RILEY JAMES HINDS,** | |
| **Defendant.** | |

The government asks the Court to impose a sentence of no greater than 30 months' imprisonment, to be followed by a three-year term of supervised release.

The defendant was engaged in the distribution of large amounts of MDMA, a Schedule I controlled substance that is known on the street as "Molly" and "Ecstasy." At the time he was dealing, the defendant also possessed of a large number of firearms. While the defendant has done very well on pretrial supervision, a factor the Court can and should consider in fashioning an appropriate sentence, given his advisory sentencing guideline range, the nature of what he was

///

**Government's Sentencing Memorandum**                                    **Page 1**

selling, and his possession of multiple firearms the government believes the requested sentence is reasonable.

## A.    Summary of Proceedings.

On April 1, 2026, following lengthy negotiations between the parties primarily focused on the legal issues surrounding a search warrant that was executed in this case, the defendant pled guilty to Count 1 of the Indictment which charged him with engaging in a Conspiracy to Distribute and Possess with Intent to Distribute MDMA, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846.  The maximum sentence the Court may impose is a term of 20 years' imprisonment, fine of $1,000,000, and at least three years of supervised release.  The count of conviction carries a $100 fee assessment.

A Presentence Report (PSR) has been completed.  The government believes the facts underlying the defendant's count of conviction (PSR ¶¶ 25 - 37) and the majority of the Sentencing Guideline calculations (PSR ¶¶ 43 – 50) are correct.  The government has no objection to the information about the defendant's personal history and characteristics.  PSR ¶¶ 61 – 95.  As defense counsel notes, after lengthy discussions between the parties regarding the legal issues surrounding the search warrant that was executed in this case, we jointly disagree with the PSR's Base Offense Level calculations for the reasons outlined below.

In his plea agreement defendant admitted that:

> At trial the government could prove that beginning on or about an unknown date and continuing until on or about January 26, 2024, within the District of Oregon and elsewhere, the defendant conspired with others to distribute and possess with intent to distribute MDMA (3,4-Methylenedioxymethamphetamine), a Schedule I controlled substance, here within the District of Oregon.  As part of this conspiracy, defendant would purchase MDMA from various vendors online and have the

**Government's Sentencing Memorandum**                                    **Page 2**

MDMA shipped to him here in Oregon and after receiving the MDMA he would then further distribute it to other dealers and users.

Plea Agreement ¶ 6.

The defendant is currently out of custody on pretrial supervision.

## B.    Sentencing Guideline Calculations.

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines.  18 U.S.C. § 3553(a)(4). "The Guidelines are 'the starting point and the initial benchmark,'. . . and are to be kept in mind throughout the process."  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)).  "All sentencing proceedings are to begin by determining the applicable Guideline range."  *Id*.

### Base Offense Level (26)

The parties have agreed that defendant's relevant conduct, pursuant to USSG §§ 1B1.3 and 2D1.1(a), includes approximately:

- 1,105 grams of MDMA;
- 390 grams of Ketamine;
- 32 grams (90 pills) of Oxycodone; and,
- 113 grams of Xanax (Alprazolam),

for an initial Base Offense Level of 26.  Plea Agreement ¶ 8.

While the parties acknowledge that additional controlled substances were recovered from his residence, as noted in the PSR, after a series of very lengthy and detailed discussions, although the government believes the search warrant was valid, the parties acknowledge that there are credible concerns that defense counsel has raised about the search warrant that was executed on the defendant's residence.  Accordingly, as a legal compromise, the parties have

**Government's Sentencing Memorandum**                                    **Page 3**

agreed to exclude the drugs found within the residence from the Base Offense Level determination but include the firearms that were recovered from the residence as a Specific Characteristic Enhancement. *Id.* This compromise, while resulting in a lower initial Base Offense Level, also results in the defendant not qualifying for "Safety Valve" relief. The PSR, on the other hand, has included all of the controlled substances found inside the residence to arrive at their Base Offense Level of 30. PSR ¶ 42. Should the Court adopt the PSR's Base Offense Level determination the government will ask the Court to exercise its discretion under 18 U.S.C. § 3553(a) to grant an initial variance down to the equivalent of a Base Offense Level of 26.

### Firearm Adjustment (+2)

Because defendant possessed firearms in connection with the offense, pursuant to USSG § 2D1.1(b)(1), the parties believe that defendant's initial Base Offense Level should be increased by two-levels. Plea Agreement ¶ 9, PSR ¶ 43.

### Acceptance of Responsibility (-3)

Based upon defendant's guilty plea and acceptance of responsibility, pursuant to USSG § 3E1.1, the parties ask that the Court grant the defendant a three-level reduction in his offense level. Plea Agreement ¶ 12, PSR ¶¶ 49 - 50.

Prior to any additional departures or variances, the government believes defendant's initial Adjusted Offense Level is 25. With a Criminal History Category of I, defendant's initial advisory sentencing guideline range would be 57 to 71 months' imprisonment.

///

///

**Government's Sentencing Memorandum**                                                        **Page 4**

**Downward Variance (-2)**

Pursuant to 18 U.S.C. § 3553(a), based upon the nature of the offense, the history and characteristics of the defendant, defendant's indication at an early stage in the proceedings about his desire to resolve the case, and to achieve a fair and just resolution of the case, the government will recommend that the Court to grant the defendant a two-level downward variance in his overall offense level.  Plea Agreement ¶ 13.  Defendant is free to seek an additional downward variance, and has.  Plea Agreement ¶ 16(B).

The government's additional two-level 3553(a) reduction would result in an Adjusted Offense Level of 23 and with a Criminal History Category of I, the defendant's advisory sentencing guideline range would be between 46 to 57 months' imprisonment.

**C.      Government's Recommended Sentence.**

Pursuant to 18 U.S.C. § 3553(a) and the information contained in the materials submitted to the Court in advance of sentencing, we ask the Court to impose a sentence of no greater than 30 months' imprisonment, to be followed by a three-year term of supervised release.

The defendant was involved in the large-scale distribution of MDMA and while doing so possessed a multitude of firearms.  Any time that a drug dealer possesses firearms there is an increased risk to the community.  Furthermore, MDMA, by itself poses risks to those who use it. MDMA, a Schedule I controlled substance, operates as "both a stimulant and hallucinogen, producing an energizing effect, distortions in time and perception, and enhanced enjoyment of tactile experiences."  DEA Fact Sheet, *Ecstasy or MDMA (also Known As Molly)* (https://www.dea.gov/factsheets/ecstasy-or-mdma-also-known-molly) (last checked August 6, 2026).  MDMA use can result in increased "heart rate, blood pressure, muscle tension, tremors,

**Government's Sentencing Memorandum**                                      **Page 5**

teeth clenching, nausea, sweating, euphoria, empathy, reduced inhibition, chills, blurred vision, confusion, anxiety, depression, paranoia, severe dehydration, sleep problems, and drug craving," and in "high doses, MDMA can interfere with the body's ability to regulate temperature . . . lead[ing] to a sharp increase in body temperature (hyperthermia), resulting in liver, kidney, or cardiovascular system failure, swelling of the brain, and even death." *Id.*

To defendant's credit, since being released to pretrial supervision he has done very well. Coming into this case the defendant struggled with a history of polysubstance abuse and other issues. After being released to pretrial supervision the defendant has successfully completed drug treatment, retuned to school to pursue a counseling degree, works as a peer support specialist and recovery mentor, and is employed full-time. He has surrounded himself with a pro-social network that benefits him and has the ability to positively influence others. His achievements are noteworthy and can and should be taken into account by the Court in determining an appropriate sentence. Although we do not support defendant's requested sentence, we understand it. The extent of how his ongoing post-offense rehabilitation factors into the final sentence is appropriately within the Court's hands.

Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a sentence

of no greater than 30 months' imprisonment is reasonable.  We ask the Court to impose it, to be followed by a three-year term of supervised release.

At the time of sentencing the USAO will ask the Court to dismiss Counts 2 and 3.

There is an appeal waiver.

Dated: August 6, 2026.                                    Respectfully submitted,

                                                          SCOTT E. BRADFORD
                                                          United States Attorney


                                                          /s/ *Scott Kerin*

                                                          SCOTT M. KERIN, OSB # 965128
                                                          Assistant United States Attorney